## In re JOHNSON & KNOX LUMBER CO.

### LATHAM v. JONES.

(Circuit Court of Appeals, Seventh Circuit. January 2, 1907.)

No. 1,284.

**1. BANKRUPTCY—REFEREES—CONTEMPT—ACTS CONSTITUTING CONTEMPT—FAILURE TO APPEAR AS WITNESS.**

A witness before a referee in bankruptcy, whose examination had been concluded, except that he had refused to voluntarily produce a document, is not in contempt for a failure to appear at an adjourned hearing on a subsequent day, where he was not tendered fees for such appearance, nor served with a subpœna duces tecum to produce the document.

**2. SAME—FAILURE TO OBEY VOID ORDER.**

A court of bankruptcy is without power, on an oral motion by counsel for a receiver, to make an order requiring a person not a party to any proceeding before it to appear before a referee and produce a document where he was not brought before the court by the service of any notice, process, or rule to show cause, and did not enter an appearance, and such an order is void, and its disobedience is not a contempt.

**3. SAME.**

A finding that an attorney was guilty of a contempt of court in returning a document in his possession to a client to whom it belonged, after he had been asked to produce it as a witness before a referee in bankruptcy, and had refused, *held* not warranted by the facts where he had not been served with any process to produce it, and while his client lived in another district, it was not beyond the jurisdiction of the court, and where he was adjudged in contempt without any evidence to refute his sworn answer, denying any intention to so place it, or that the document had any relation to the proceedings, and without being accorded a hearing on his claim of privilege in that the document was in his possession in his professional capacity, and he had no right to produce it.

In Error to the District Court of the United States for the Northern District of Illinois.

The writ of error challenges the correctness of a judgment which holds plaintiff in error guilty of contempt of court, and subjects him to fine and imprisonment.

On January 4, 1906, a petition was filed against the Johnson & Knox Lumber Company, and on March 12, 1906, the company was adjudged a bankrupt. The day the petition was filed the court appointed a receiver to take charge of the property of the company until either the petition should be dismissed or a trustee should qualify. The next day, January 5th, on petition of the receiver, the court authorized an examination of witnesses before a referee with respect to the assets of the company. In obedience to a subpœna, plaintiff in error, an attorney at law, appeared for examination on January 16th. The examination was conducted by counsel for the receiver in one of the rooms of the referee's chambers, before a stenographer, in the absence of the referee. Plaintiff in error was not an officer or stockholder of the Johnson & Knox Lumber Company. He had attended to some matters for it, but had not been its general attorney. At and subsequent to the filing of the petition in bankruptcy, he had no connection with the company. At the time of his examination, and for a considerable time prior thereto, he was the attorney of a Mr. Johnson who formerly had been an officer and stockholder of the lumber company. In his examination it appeared that, as attorney for Johnson, he had been present at negotiations with one Creelman in regard to Johnson's taking care of promissory notes held by Creelman, on which Johnson was liable as maker, indorser, or guarantor. The following part of the examination shows how the present controversy began:

"Q. What about the other conversation you had with Creelman at his office?

"A. That was also in connection with those negotiations. They hung fire for some time.

"Q. Have they been settled?

"A. Yes, sir.

"Q. Were they settled by written contract?

"A. Yes, sir.

"Q. Who has that contract?

"A. I am not sure. It may be in my office or it may be in Mr. Johnson's possession.

"Q. Will you produce that contract?

"A. Certainly not.

"Q. Well, we will have to subpœna you to produce it.

"A. All right.

"Q. Because that is a written contract—

"A. If you know of any principle of law by which you can bring in the personal affairs of these two men—

"Q. This contract, as you say, was drawn up between W. S. Johnson and F. E. Creelman, anybody else?

"A. No.

"Q. And was drawn up as an effect of the preliminary negotiations you had with Creelman, which negotiations among other things, discussed some of Johnson & Knox Lumber Company papers?

"A. Well, I am not sure; but I am inclined to think that in it there was a provision made for payment of one or two notes—perhaps. I am not sure whether there was any.

"Q. But you have heretofore testified—

"A. Well, notes signed by Johnson & Knox Lumber Company and given to Creelman, or some paper payable to him, and guaranteed by W. S. Johnson; now I think there was one note of that kind, but I am not sure.

"Q. It would be such a contract as the receiver would be entitled to.

"A. Not at all."

Counsel for the receiver left the stenographer's room to secure the referee's attendance. The referee had gone to luncheon. Plaintiff in error returned to his office without any agreement having been entered into respecting his further attendance. That afternoon the referee without plaintiff in error's knowledge entered an order continuing the hearing to the next day, January 17th. About 11 o'clock of the 17th counsel for the receiver telephoned to plaintiff in error inquiring whether he would appear before the referee. Plaintiff in error replied that if his presence was further required he would insist upon being subpœnaed.

On the 18th the referee certified plaintiff in error's examination to the court. On the 19th counsel for the receiver, as the bill of exceptions shows, orally moved for a rule on plaintiff in error to show cause why he should not produce the contract between Johnson and Creelman. No notice whatever had been given to plaintiff in error, but he chanced to be in court on another matter at the moment the motion was made. He stated that his position during the examination had been that the document was the property of his client, that his possession of it was privileged, and that the contract therein contained did not relate to the acts or property of the Johnson & Knox Lumber Company; and that he desired an opportunity to resist the motion. In the course of a colloquy between court, counsel for the receiver and plaintiff in error, it appeared that plaintiff in error on returning to his office in the afternoon of the 16th had found that the document was in his office and not in the hands of his client, and that he mailed the document to his client whose residence was in Milwaukee. Thereupon the court, about 11:30 o'clock, ordered that plaintiff in error produce the document before the referee at 2 o'clock.

"Mr. Latham: If your honor please, I would suggest that an order be made in the nature of a rule on me to show cause why I should not produce this contract, and on the hearing of that rule I will be given an opportunity to set up the reasons why I should not be ordered to produce it. In addition

·I may say that it would be a physical impossibility to get the document from Milwaukee by 2 o'clock.

"The Court: The court has entered its order.

"Mr. Latham. Your honor, I feel that the order should be simply an order on me to show cause why the document should not be produced, and then the matter can be referred to the referee, and the question I have presented can be argued. As I have stated before, I am entirely unprepared this morning, as I had no notice of this proceeding and happened in court in another matter entirely, and I do want an opportunity to be heard on the question relating to whether this document is one that I can be compelled to produce.

"The Court: I will let the order stand as I have entered it, and you can take the matter up before the referee at 2 o'clock."

At the hour named plaintiff in error appeared before the referee, without the document, and tendered an answer, which the referee refused to receive. The referee certified to the court that plaintiff in error had failed to produce the document, and had tendered an answer. Whereupon counsel for the receiver served notice on plaintiff in error that on January 22d he would move for an attachment for contempt "for failure to produce a certain contract in pursuance of the court's order of January 19th." The motion was made orally "that he be attached for contempt for two reasons: First, for failing to appear at the time; and, second, for not producing the paper in accordance with the rule entered in this court." No affidavit and information, or complaint, was ever filed.

Plaintiff in error filed a sworn answer, to the effect that all of his actions in question had been taken in good faith, and in the belief that his duty to his client required such a course; that the contract was wholly between Johnson and Creelman and related exclusively to their private affairs; that the Johnson & Knox Lumber Company was not a party thereto nor interested therein: and that the contract came into his possession in his capacity of attorney for Johnson.

In the course of his testimony plaintiff in error stated, in substance, that when he returned the document to his client he intended no disrespect to the court or to the referee, but acted only as he believed his duty to his client justified; and that, if the receiver should cause him to be served with a subpœna duces tecum or should apply for an order to show cause why the document should not be produced, he desired and intended to raise the legal question of the receiver's right; and that, if the court should disagree with him, he would direct his client either to take up the ruling for review or to comply with the order—"but I did not feel that I should so advise my client until I had had a hearing on these questions."

Milwaukee is less than 100 miles from Chicago.

The contract was executed in duplicate, and Creelman had his copy in Chicago. In the bill of exceptions appears this acknowledgment by counsel for the receiver: "We could have got it [the contract] from Mr. Creelman."

No evidence was produced on the part of the prosecution, except the certificates of the referee, plaintiff in error's examination before the referee's stenographer, and plaintiff in error's admission that he sent the document to his client on January 16th.

Carl R. Latham, in pro. per.

Frank H. Scott, for defendant in error.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge (after stating the facts). Counsel for the receiver say that plaintiff in error was guilty of three contumacious acts: First, in failing to appear before the referee on January 17th; second, in failing to produce the document before the referee in obedience to the court's order of the 19th; and, third, in sending the document to his client on the 16th.

At the end of plaintiff in error's examination by counsel for the receiver no matter was left open except the receiver's right to compel the production of the document. Plaintiff in error had attended in obedience to an ordinary subpœna. When the question arose and plaintiff in error answered that if he had the paper he would not voluntarily produce it, counsel said "We will have to subpœna you to produce it." No fees were paid or tendered for attendance on the 17th. No subpœna duces tecum was served. No notice of an application for an order to produce was given. In avoidance, it might be said that each of such steps would have been fruitless on account of plaintiff in error's act in sending the document to his client in the afternoon of the 16th. But this, if true, would merely confess the obvious, that the facts relating to the first charge are worthless except in so far as they may bear upon the third.

The second charge comes to the same point. Plaintiff in error was not brought into court by legal process. He chanced to be present when the motion was called up. He did not enter his appearance. He did not consent to the order. He asked to have his day in court in resistance to the motion. If in truth a plea of privilege were sustained, an order to produce would be erroneous. This order, being a determination of rights without a hearing, a judgment without process and without trial, was void. And when it is urged that plaintiff in error was not entitled to a hearing because of his act in turning the paper back to his client, the whole case is brought down to the third charge.

This question of criminal contempt, for an act not committed in the presence of court or referee, was not formulated in an information or complaint, was not even stated in the oral motion for the writ of attachment.

Passing that, we will take the finding as the complaint. The court found that the contract between Johnson and Creelman provided for the payment of debts of the Johnson & Knox Lumber Company; that the filing of the petition and the appointment of the receiver subjected the contract to the jurisdiction of the court; that plaintiff in error sent the document beyond the reach of the process of the court for the purpose and with the intent of defeating or impeding the administration of justice; that Johnson gave the document to plaintiff in error because he was an officer of the court; that plaintiff in error held the paper as an officer of the court and in sending it beyond reach of process was guilty of misconduct in his official capacity.

The finding that the contract provided for the payment of debts of the lumber company is in the teeth of the sworn answer. Of course the filing of the answer did not require the discharge of plaintiff in error. It was open to the moving party or to the court to bring out countervailing evidence. The only claim of such is the examination before the referee's stenographer. The statements there that the contract was wholly between Johnson and Creelman, and that Johnson in providing for his indebtedness to Creelman included his liability as indorser or guarantor of a note executed by the lumber company as maker, instead of contradicting, supports the answer.

The document was not sent beyond the reach of the process of the court. Johnson at Milwaukee, though in another district, as a witness was subject to the court's process as fully as if he had been in the Northern District of Illinois. Section 876, U. S. Rev. St. [U. S. Comp. St. 1901, p. 667]. Further, the contract was in duplicate, and one copy was in Chicago, subject to use in disputing plaintiff in error's sworn answer or for any other purpose to which it could legitimately be put.

There is no evidence to show that Johnson put the document in plaintiff in error's hands as an officer of the court below. The record is that plaintiff in error received the paper as attorney for Johnson. Not a shadow of a suggestion appears that this was done for the purposes of or in connection with any matters in the District Court.

As to plaintiff in error's intent in returning the paper to his client, the finding repudiates the sworn answer. Concededly, if an act speaks for itself as being contumacious, the respondent's oath that no disrespect was intended need not be accepted. But nearly every page of the record confirms the answer. Plaintiff in error's repeated endeavor was to obtain a hearing upon his and his client's rights. Nothing in the record warranted a denial of a hearing on the mere fact that he had turned the paper over to his client. He was not under process for its production. He did not put it beyond the reach of process. It was not even proved that the document was beyond his own ability to produce. While there is no direct evidence that he continued able to produce the paper, an inference to that effect is deducible from his protest against the entry of the order at 11:30 o'clock that he produce it at 2, namely, that it was a physical impossibility to get the document back from Milwaukee by that hour, and also from his testimony touching motive, namely, that he deemed it his duty, according to Lord Mansfield's holding in Rex v. Dixon, 3 Burrows, 1687, to return the paper to his client who owned it, but that, if on a hearing of a motion against himself the ultimate decision should be against his contentions, he would advise his client to produce the document.

Our conclusion being that the findings of the court, and particularly the finding of criminal intent, were each without warrant, it is unnecessary to pass upon the contention that counsel for the receiver, in conducting the examination, had an entirely erroneous conception of the functions of a receivership in bankruptcy pending adjudication.

The judgment is reversed, with the direction to dismiss the proceedings.